Israel Morales Vargas, peticionario, *v.* Adoración Jaime Jaime, recurrida.

*Número:* CC-2002-908        *Resuelto:* 23 de noviembre de 2005

*Grisel Vanessa Crespo*, abogada de la parte peticionaria; *Myrna Delma Ortiz Delgado*, abogado de la parte recurrida.

La Jueza Asociada Señora Fiol Matta emitió la opinión del Tribunal.

Este caso nos permite atender dos asuntos de gran relevancia en materia de alimentos entre ex cónyuges y de interpretación legislativa. En primer lugar, debemos resolver cuál es la relación entre el Art. 109 del Código Civil de Puerto Rico, según enmendado, 31 L.P.R.A. sec. 385, que se refiere a los alimentos entre ex cónyuges, y los Arts. 142–144 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 561–563, que regulan los alimentos entre parientes. En segundo lugar, este caso nos requiere aclarar la función jurídica de las ocho circunstancias añadidas al Art. 109 en 1995 mediante la Ley Núm. 25 de 16 de febrero de ese año.

I

Las partes en este caso, Israel Morales Vargas y Adoración Jaime Jaime, se divorciaron el 5 de septiembre de 2001. Durante su matrimonio procrearon seis hijos, todos mayores de edad al momento del divorcio de sus padres.

El 17 de octubre de 2001, la señora Jaime Jaime presentó una petición de alimentos al amparo del Art. 109 del Código Civil, *supra*. Alegó que carecía de medios suficientes para vivir, dado que nunca ejerció un trabajo por el cual percibiera un salario. También alegó que durante su matrimonio se dedicó a cuidar de sus seis hijos y a las labores del hogar.

El señor Morales Vargas se opuso a esta petición y presentó una moción de desestimación en la que argumentó que los llamados a alimentar a su ex cónyuge eran sus

parientes más próximos. Adujo así que la señora Jaime Jaime estaba obligada a reclamar alimentos, en primer lugar, a sus descendientes, en segundo lugar, a sus ascendientes y, en tercer lugar, a sus parientes colaterales. Sólo entonces, si no podían cumplir los parientes antes mencionados, es que podría recurrir al citado Art. 109 del Código Civil.

Trabada la controversia y luego de la vista correspondiente, el tribunal de instancia declaró "con lugar" la moción de desestimación del señor Morales Vargas. Concluyó que

> ... la promovente ha de reclamar en primer lugar a sus descendientes, en segundo lugar a sus ascendientes y en tercer lugar a sus parientes colaterales, hermanos y sobrinos. De no poder éstos, entonces es de aplicación la obligación del excónyuge. Resolución del Tribunal de Primera Instancia, págs. 5–6.

Al fundamentar su decisión, destacó que la señora Jaime Jaime

> ... cuenta con descendientes y colaterales capacitados para ayudarle, dos de los hijos y la familia de uno de ellos, disfrutan y se benefician de la posesión de los bienes muebles e inmueble que [ella] ostenta, sin pagar canon o merced alguna por ello. Resolución del Tribunal de Primera Instancia, pág. 6.

También destacó que el señor Morales Vargas "asumió todas las deudas de la extinta sociedad legal de gananciales, no dejando deuda alguna" a la señora Jaime Jaime.([1])

---

([1]) El Tribunal de Primera Instancia hizo las determinaciones de hechos siguientes:

"1. La peticionaria nunca ha ejercido otra labor que la de madre, esposa y ama de casa. Cursó hasta noveno grado de escuela intermedia. Cuenta con la edad de cincuenta y un años (51). Durante el matrimonio la única fuente de ingresos provino del peticionario, Dos [sic] Israel Morales Vargas. El demandado hace cinco (5) años comenzó a trabajar en la Corporación del Fondo del Seguro del Estado en el área de archivo.

"2. La peticionaria declaró que actualmente solamente cuenta con $180.00 mensuales que recibe por concepto de Programa de Asistencia Nutricional para ella y para su hija. Sus gastos personales $15.00, agua $15.00, energía eléctrica $80.00, transportación pública $15.00. Continua haciendo uso del Plan Médico de su esposo

Inconforme con esta determinación, la demandante acudió al Tribunal de Apelaciones. Ese foro revocó la decisión del tribunal apelado y le impuso al señor Morales Vargas la obligación de pagar a la señora Jaime Jaime una pensión alimenticia, aunque devolvió el caso al tribunal de instancia para que determinara la cuantía. El Tribunal de Apelaciones fundamentó su decisión en que

> ... [a]un estableciendo que el ex-cónyuge reclamante puede acudir a sus parientes para alimentos, entendemos que en primera instancia éstos deben ser reclamados al ex-cónyuge, a tenor con el Artículo 109, supra. De éste no poder cumplir con dicha obligación y en atención a las circunstancias particulares del caso, el tribunal deberá evaluar si procede establecer la obligación de alimentar a los parientes, de conformidad a los Artículos 143 y 144. (Escolio omitido.) Sentencia del Tribunal de Circuito de Apelaciones, págs. 13–14.

El señor Morales Vargas acude ante nosotros, alegando que el foro apelativo incidió al "determinar que el obligado en primera instancia a proveer alimentos es el ex cónyuge y no sus parientes" y al "revocar al Tribunal de Primera

hasta abril de 2002, fecha en que cesará dicho beneficio. Tiene gasto mensual en medicina de aproximadamente $20.00 a $25.00. En cuanto a los demás gastos se sometió Planilla de Información Económica en evidencia. Conforme a la misma la peticionaria tiene un gasto mensual de $597.33.

"3. También declaró que reside en el hogar ganancial y está en posesión y disfrute de los bienes y efectos propios del hogar. Actualmente viven en su hogar dos de sus hijos, ambos son mayores de edad. Uno de ellos está casado y vive con su esposa y una hija, también en el hogar de la peticionaria. La demandada no trabaja, se ocupa de las tareas propias del hogar y ha cuidado de la nieta mientras su hijo y la esposa de éste trabajan.

"4. Los servicios de la vivienda están a nombre del demandado, excepto el teléfono que está a nombre del hijo que vive en el hogar quien paga porque es suyo. Durante el matrimonio hubo deudas gananciales pero el demandado no le dejó deudas, ya que él las asumió.

"5. El demandado trabaja en el Fondo del Seguro del Estado de Caguas y tiene un ingreso de $2,000.00 mensuales. Recibe un Bono de Navidad de $1,500.00. No tiene ningún otro tipo de trabajo. Reside con sus padres, quienes cuentan con la edad de 84 y 82 años respectivamente, en la residencia de éstos. Él paga todas las deudas gananciales que ascienden a $480.00 mensuales, además de una deuda de teléfono perteneciente a su hijo y que él tuvo que asumir. Dicha deuda era de $1,278.00 y paga $125.00 mensuales. Estudia los sábados un curso de reparación de computadoras. Alegó padecer de desbalance y tiene un gasto mensual de medicamento de $25.00 los cuales no cubre el plan. Tiene un préstamo de estudiante de $120.00 mensuales. Tiene gasto de luz de $100.00 bi-mensual." Resolución del Tribunal de Primera Instancia, págs. 1–4.

Instancia, ya que la recurrida no probó su necesidad de alimentos". Petición de *certiorari*, pág. 5. El 14 de febrero de 2003 expedimos el auto. Tras varios trámites, el 11 de agosto de 2003 dimos el recurso por sometido. Así, estamos en posición de resolver.

## II

La controversia central de este caso nos requiere dilucidar si hay alguna relación entre los Arts. 109 y 142 del Código Civil de Puerto Rico, *supra*, y si como consecuencia de esa relación existe un orden de prelación que obligue a un ex cónyuge a agotar los remedios de los Arts. 142–144, *supra*, antes de poder solicitar alimentos al amparo del citado Art. 109. Concluimos que el origen y propósito de cada uno de estos artículos es distinto; en tanto que el Art. 142 establece una obligación puramente alimenticia, el Art. 109 establece una obligación *sui generis* que surge estrictamente como consecuencia del divorcio. Sin embargo, ambas obligaciones están investidas "del mayor interés público". *González v. Suárez Milán*, 131 D.P.R. 296, 301 (1992). En este caso señalamos que

> ... la obligación de dar alimentos surge del derecho fundamental de todo ser humano a existir y a desarrollar plenamente su personalidad. Por eso es un " 'deber altamente social, que no depende de la voluntad del que le tiene, sino que se impone ... como una de las condiciones necesarias de la vida progresiva de la humanidad' ". *González v. Suárez Milán*, supra, pág. 301, citando a J.M. Manresa y Navarro, *Comentarios al Código Civil español*, 7ma ed. rev., Madrid, Ed. Reus, 1956, págs. 782–783.

### A. *Los Artículos 142–144 del Código Civil de Puerto Rico*

Los Arts. 142–144 del Código Civil de Puerto Rico, *supra*, regulan la obligación que nace del parentesco, dentro de ciertos límites y cuando concurren determinadas circunstancias. Son idénticos a los artículos de la misma enumeración en el Código Civil español. El primero define

los alimentos como todo aquello que "es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia"; además, señala que los alimentos comprenden también la "educación e instrucción del alimentista cuando es menor de edad". El Art. 143, *supra*, establece quiénes están obligados a proveerse alimentos recíprocamente, a saber: los cónyuges, los ascendientes y descendientes, y los hermanos. Por último, el Art. 144, *supra*, dispone un orden de prelación entre los llamados a darse alimentos, en aquellos casos en que concurran dos o más obligados. Según el orden así dispuesto, cuando sean dos o más los obligados, éstos lo estarán en el orden siguiente:

1. Al cónyuge.
2. A los descendientes del grado más próximo.
3. A los ascendientes también del grado más próximo.
4. A los hermanos.

Además, el citado Art. 144 aclara que cuando los obligados sean descendientes y ascendientes entre sí, "se regulará la gradación por el orden en que sean llamados a la sucesión legítima de la persona que tenga derecho a los alimentos".

## B. *El Artículo 109 del Código Civil de Puerto Rico*

En 1902, como consecuencia del cambio de soberanía ocurrido cuatro años antes, se realizó una importante revisión del Código Civil de Puerto Rico, con la intención principal de "armonizarlo" con el sistema americano.([2]) Fue en ese contexto histórico que se introdujo a nuestro país el

---

([2]) El informe de la Comisión Codificadora designada por el Presidente de Estados Unidos para enmendar el Código Civil vigente en Puerto Rico sostuvo que:

" 'Es indudable que la mente del Congreso fu[e] poner las instituciones de la isla en más estrecha [a]rmonía con el sistema americano, pero sin efectuar cambios repentinos .... Todo cambio violento que se hiciera despertaría las fuerzas para americanizar la isla.' " L. Muñoz Morales, *Reseña histórica y anotaciones al Código Civil de Puerto Rico*, Río Piedras, Ed. U.P.R., 1947, pág. 23.

Art. 109,(³) sobre alimentos entre ex cónyuges, copiado del Art. 160 del Código Civil de Louisiana.(⁴) Éste, a su vez, se había redactado utilizando como modelo el Art. 301 del Código Civil Napoleónico o Código Civil francés de 1805.(⁵) De esta forma se incorpora en nuestra jurisdicción, aunque de manera indirecta, el modelo francés de alimentos entre ex cónyuges.

Los Arts. 160 de Louisiana y 109 de Puerto Rico, *supra*, establecieron ciertas variantes importantes con respecto al modelo francés.(⁶) Ambos limitaban la pensión únicamente

---

(³) El Art. 109 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 385, corresponde al Art. 177 del Código Civil de Puerto Rico vigente entre 1902 y 1930, año en que se reenumeró como Art. 109. Desde entonces no ha sufrido ningún cambio estructural. Véase T. Picó de Silva, *Los alimentos al ex-cónyuge: algunas consideraciones en torno a una reforma*, 40 Rev. C. Abo. P.R. 29, 30–31 (1983).

(⁴) La versión que se adoptó fue la vigente en ese estado en 1902, pero que databa de 1870; es decir, era anterior al Código Civil español vigente en Puerto Rico, que fue extendido a Puerto Rico en 1889. R. Serrano Geyls, *La nueva Ley de Pensiones Alimentarias Post-Divorcio*, 30 Rev. Jur. U.I.P.R. 97, 97–98 (1996). Véase, además, Muñoz Morales, *op. cit.*, págs. 258–276; *González v. Suárez Milán*, 131 D.P.R. 296, 298–300 (1992).

(⁵) El Art. 160 del Código Civil de Louisiana, según enmendado en 1928, proveía lo siguiente:

"If the wife who has obtained the divorce, has not sufficient means for her maintenance, the court may allow her, in its discretion, out of the property of her husband alimony which shall not exceed one-third of his income. ...

"This alimony shall be revocable in case it should become unnecessary, and in case the wife should contract a second marriage." LSA-C.C. Sec. 160 (West 1952).

Por otro lado, el Art. 301 del Código Civil francés establece:

"Si los esposos no hubieran concedido ninguna ventaja, o si las estipuladas parecieren insuficientes para asegurar la subsistencia del esposo que hubiere obtenido el divorcio, el tribunal podrá concederle, sobre los bienes del otro cónyuge, una pensión alimenticia, que no podrá exceder del tercio de los ingresos del otro cónyuge. Esta pensión será revocable en el caso de que dejara de ser necesaria."

(⁶) La versión vigente antes de la Reforma de 1995 establecía lo siguiente:

"Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia de la cuarta parte de los ingresos, rentas o sueldos percibidos.

"Si el divorcio se ha decretado por la causal de separación, la mujer podrá solicitar los alimentos a los que se refiere el párrafo anterior, si no cuenta con medios suficientes para vivir.

"La pensión alimenticia será revocada si llegase a hacerse innecesaria, o cuando la mujer divorciada contrajese segundo matrimonio o cuando viva en público concubinato u observare vida licenciosa." 31 L.P.R.A. sec. 385.

Esta disposición refleja la enmienda efectuada por la Ley Núm. 90 de 5 de mayo de 1948, que alteró el artículo en cuatro aspectos fundamentales. En primer lugar, se

a la mujer, mientras que la versión francesa se refería a cualquier cónyuge. Por otro lado, se establecía el subsiguiente matrimonio de la mujer como causa para revocar la pensión. A pesar de esas diferencias, estos artículos mantuvieron los caracteres fundamentales de la versión francesa. Es decir, los tres artículos concretaban tres reglas esenciales: (a) tan sólo el ex cónyuge "inocente"([7]) tenía derecho a la pensión, (b) los recursos del ex cónyuge inocente debían ser insuficientes y los del "culpable"([8]) suficientes para sufragar la pensión y (c) se establecía un límite máximo para la pensión. Véase H. León Mazeaud y J. Mazeaud, *Lecciones de Derecho Civil*, Buenos Aires, Ed. Jurídicas, 1959, Vol. II, págs. 501–516.

Esta disposición se distinguía, en todas sus versiones,([9]) por su carácter subjetivista, ya que establecía la culpa como un elemento de umbral al determinar la pensión alimenticia. Debido a este elemento de "culpa", el pago de la pensión ex cónyuge se asemejaba a una obligación *ex delicto* y se alejaba de la típica obligación alimenticia.

◼ En la doctrina francesa, esta dualidad dio lugar a cierta controversia sobre la naturaleza jurídica de la pensión. Para algunos tratadistas, la pensión del ex cónyuge suponía una obligación alimenticia y constituía esencialmente una manifestación de la obligación de socorro

---

amplió la base del cómputo de la pensión al incluir "ingresos, rentas y sueldos", además de los bienes propiedad del marido. En segundo lugar, se añadió que la mujer que obtiene el divorcio por separación también se beneficiaría de estos alimentos. En tercer lugar, se redujo el máximo de la pensión, de una tercera parte a una cuarta parte de los "ingresos, rentas o sueldos percibidos por el esposo". Por último, se añadieron dos circunstancias adicionales que conllevarían la revocación de la pensión: "vida en público concubinato" y "vida licenciosa". Picó de Silva, *op. cit.*, págs. 37–38.

([7]) Se entendía por "cónyuge inocente" aquel que, no habiendo cometido ninguno de los hechos presentados en las causales de divorcio, lo obtenía.

([8]) Se entendía por "cónyuge culpable" aquel que cometió alguna de las faltas enumeradas dentro de las causales de divorcio y que por ende lo provocaba.

([9]) Arts. 109 del Código Civil de Puerto Rico, *supra*, 160 del Código Civil de Louisiana y 301 del Código Civil francés.

entre esposos.([10]) Es decir, se concebía esta pensión como una extensión de la obligación entre parientes, que aún disuelto el matrimonio obligaba a los ex cónyuges. Esta concepción estaba reñida con la idea de que el divorcio rompía todo vínculo entre los ex cónyuges.([11]) Otro sector de la doctrina percibía esta pensión como una "aplicación pura y simple al divorcio de los principios generales de responsabilidad civil.([12]) La pensión es de esa forma vislumbrada como una indemnización debida por el [ex cónyuge] responsable del divorcio al que es la víctima de su culpa, como reparación del perjuicio causado". León Mazeaud y Mazeaud, *op. cit.*, pág. 510.([13])

Ambas corrientes recibieron fuertes críticas, dando lugar a una tercera corriente ecléctica, para la cual la pensión de ex cónyuge es de naturaleza mixta. Se señala entonces que

> ... el perjuicio que tiene por objeto reparar el abono de la pensión alimentaria es exclusivamente el que resulta de la cesación de la vida conyugal; es decir, de la extinción, por falta del cónyuge culpable, de la obligación del artículo 212 [Art. 142 del Código Civil de Puerto Rico, 31 L.P.R.A. 561], que caracterizaba la vida conyugal y que no puede sobrevivirle. M. Planiol y J. Ripert, *Tratado práctico de Derecho Civil francés* (M. Díaz Cruz, trad.), La Habana, Ed. Cultural, 1939, Vol. II, págs. 497–498.

Según esta teoría, la obligación de pagar pensión de ex cónyuge está fundamentada en la culpa e indemniza al cónyuge inocente por la eliminación de la obligación de socorro entre parientes causada por el cónyuge culpable al

---

([10]) Véase Art. 142 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 561.

([11]) Esta idea se manifiesta claramente en nuestro ordenamiento en el Art. 105 del Código Civil de Puerto Rico, que dispone que "el divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges". 31 L.P.R.A. sec. 381.

([12]) Véase el Art. 1802 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141.

([13]) En *Rubio Sacarello v. Roig*, 84 D.P.R. 344, 359 (1962), y *Suria v. Fernández Negrón*, 101 D.P.R. 316, 319 (1973), hicimos referencia a esta teoría cuasi delictual, si bien en ninguno de estos casos estaba en controversia la naturaleza jurídica de la pensión de ex cónyuge.

provocar el divorcio. Precisamente, por ser el cónyuge culpable el causante de la ruptura, éste estaba obligado a subsanar las consecuencias patrimoniales de la separación. La teoría mixta fue suscrita eventualmente por la mayoría de la doctrina francesa y su jurisprudencia.[14]

De acuerdo con la teoría mixta, la pensión ex cónyuge combina elementos de pensión alimenticia propiamente dicha y elementos de obligación *ex delicto*. De cada uno de estos elementos se deriva una serie de reglas. Así, se considera que, por su carácter alimentario, la pensión es inembargable, varía con las necesidades del acreedor y los recursos del deudor, y no es transmisible activamente. León Mazeaud y Mazeaud, *op. cit.*, pág. 510. En cuanto a su carácter indemnizatorio, la doctrina señala que la pensión de ex cónyuge se debe tan sólo cuando el perjuicio es la consecuencia directa del divorcio; por esa razón también, según ese sector de la doctrina, se puede transmitir pasivamente. Íd.

Debemos resaltar una característica que resulta pertinente a la controversia que suscita este caso y que se deriva del carácter cuasi delictual atribuido por la doctrina francesa al Art. 109, como elemento que lo diferencia sustancialmente de las obligaciones típicas alimenticias. Fundamentado en ese carácter cuasi delictual, la doctrina francesa suscribió una teoría de causalidad, según la cual el divorcio era causa de la obligación alimenticia y la necesidad económica debía surgir como efecto de éste. Así, "generalmente el señalamiento de la pensión de alimentos se hace por la sentencia de divorcio", por lo que "habrá que referirse al pronunciamiento de la sentencia del divorcio para apreciar si el demandante está falto de recursos. Efectivamente la indemnización se funda sobre el perjuicio que al cónyuge inocente causa el divorcio y la ausencia de re-

---

[14] Al respecto, véase C.E. Mascareñas, *Familia: Curso de Derecho Civil*, Ponce, Ed. U.C.P.R., 1961, pág. 303.

cursos posterior no se toma en consideración". León Mazeaud y Mazeaud, *op. cit.*, pág. 516. La jurisprudencia francesa acogió esta visión de la pensión, al sostener que el estado de necesidad del cónyuge reclamante debía surgir como consecuencia del divorcio y no por otras circunstancias. León Mazeaud y Mazeaud, *op. cit.*, págs. 501–516.([15])

La teoría de la causalidad fue acogida en Puerto Rico por Mascareñas, quien sostuvo que "la necesidad de la mujer ha de ser actual en el momento del divorcio". A su entender, si la necesidad se producía después de decretado el divorcio, no procedía la pensión, pues "[l]a necesidad o falta de medios ya no será debida a la disolución del matrimonio, que es el fundamento que determina la pensión de la mujer divorciada". C.E. Mascareñas, *Curso de Derecho Civil*, Ponce, Ed. U.C.P.R., 1961, pág. 300.

Podemos concluir a este punto que la pensión alimenticia del Art. 109, *supra*, en su versión anterior a la enmienda de 1995, constituía una pensión alimentaria *sui generis* que tenía elementos de la típica pensión alimenta-

---

([15]) Debemos dejar claro que, en la actualidad, la pensión de ex cónyuge en Francia es sustancialmente distinta. A la versión que establecía el citado Art. 301 le fueron formuladas muchas críticas:

"... su monto, a veces irrisorio ... las dificultades encontradas por los acreedores, de hecho siempre las mujeres, para obtener el pago regular, *la dramatización del proceso para obtener un divorcio por culpas exclusivas*, el contencioso que siempre podía volver a suscitarse para la revisión de la pensión. Por tales razones se imponía una reforma." (Énfasis suplido.) M. Delmas-Marty y C. Labrouse-Riou, *Matrimonio y Divorcio* (D.Martínez, trad.), Bogotá, Ed. Themis, 1987, pág. 90.

Como consecuencia de las críticas, hoy la pensión ex cónyuges en Francia es de naturaleza compensatoria. Sobre este importantísimo cambio Mireille Delmas-Marty y Catherine Labrouse-Riou explican que el legislador "sustituyó la pensión por una prestación compensatoria cuyo espíritu y técnica son diferentes". Señalan, además, que esta prestación se encuentra desligada de la culpa en el divorcio y puede favorecer a un esposo en caso de culpas compartidas. Es decir, que no se sanciona la falta ni constituye una prolongación del deber de auxilio entre cónyuges, el cual desaparece. Se caracteriza, además, por ser una suma fija, no sujeta a revisión, que se concederá en general al momento del divorcio. En fin, la nueva pensión trata de "compensar en la medida de lo posible la disparidad que crea la ruptura del matrimonio en las condiciones de vida respectivas". Delmas-Marty y Labruose-Riou, *op. cit.*, págs. 90–91. Nótese, además, que esta prestación es similar a la pensión compensatoria que impera en España y que discutimos más adelante en las notas.

ria entre parientes y elementos de responsabilidad civil.[16] Examinemos ahora las enmiendas que el legislador realizó en este artículo en 1995.

## C. *Las enmiendas de 1995*

Mediante la Ley Núm. 25, *supra*, se enmendó el Art. 109, *supra*, con el propósito principal de eliminar de su redacción la limitación relativa a cuál de los ex cónyuges podía ser acreedor a la pensión. Se introduce, entonces, la posibilidad de que el hombre también lo sea. La exposición de motivos explica que la versión anterior "representa un trato diferente y discriminatorio contra el hombre por razón de sexo", incorporando así lo que este Tribunal resolvió mediante interpretación en *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981).[17] El historial legislativo también refleja la clara intención de eliminar la culpa como criterio de umbral para la concesión de la pensión, puesto que, según se explica en el P. del S. 652, Informe de la Comisión de Gobierno al Senado de Puerto Rico: "la reforma de 1976 ha ido desapareciendo el concepto de culpa vinculado al divorcio desde que se instituyó éste en nuestra jurisdicción."

---

[16] La jurisprudencia interpretativa del Art. 109, *supra*, antes de 1995 no aborda directamente el asunto de la naturaleza jurídica de la pensión de ex cónyuge. La jurisprudencia posterior, aunque trata el asunto en algún grado, no lo hace en forma abarcadora. Véanse: *Cantellops v. Cautiño Bird*, 146 D.P.R. 791 (1998); *Soto López v. Colón*, 143 D.P.R. 282 (1997); *Díaz v. Alcalá*, 140 D.P.R. 959 (1996); *González v. Suárez Milán*, supra; *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981); *Casiano v. Tribunal Superior*, 101 D.P.R. 327 (1973); *Rubio Sacarello v. Roig*, 84 D.P.R. 344 (1962); *Meléndez v. Tribunal Superior*, 77 D.P.R. 535 (1954); *Puigdollers v. Monroig*, 26 D.P.R. 310 (1918).

[17] Allí dijimos que:

"... el esquema legislativo cristalizado en el artículo en cuestión representa, de su faz y sin lugar a dudas, un trato diferente, injustificado y discriminatorio contra el hombre por razón de sexo, que al presente —bajo el prisma de un riguroso escrutinio judicial y a menos que oportunamente detectemos la cualidad de doble refracción— no puede prevalecer. Sus antecedentes demuestran que su texto —inalterado hasta la actualidad por más de cien años— más bien responde a una concepción arcaica y esteriotipada de la función tradicional limitada que indefectiblemente se le atribuía en el antaño a la mujer: hogar y madre." *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 615-616 (1981).

En este último aspecto, nuestra legislación se sumó a la corriente europea más moderna, que reconoce que las obligaciones alimenticias deben estar ajenas a la dicotomía de "cónyuge inocente" y "cónyuge culpable". Véase H. Campuzano Tome, *La pensión por desequilibrio económico en los casos de separación y divorcio*, Barcelona, Ed. Bosch, 1986, págs. 17–22.[18] La ley de 1995 añadió al Art. 109, *supra*, la posibilidad de modificar la pensión por alteraciones sustanciales en las circunstancias, ingresos y la fortuna de uno u otro cónyuge. Por último, eliminó el criterio de "vida licenciosa" como causal para revocar la pensión alimenticia.[19]

---

[18] El Prof. Raúl Serrano Geyls también discute esto al señalar que la corriente vigente en Europa y aceptada en sistemas, en los cuales la culpa ya no es causal para los divorcios, es eliminar la culpa como presupuesto para la concesión de la pensión. Valga aclarar que en dicho aspecto esos sistemas se diferencian del nuestro, ya que aquí aún existen causales de divorcio culposas, aunque acompañadas de causales no culposas como la separación y el divorcio por consentimiento mutuo. En cuanto a la relación entre la culpa y la pensión, el mismo autor indica que con la pensión de tipo objetivo se busca "no premiar al cónyuge inocente" por razón de serlo, sino más bien se pretende reparar los perjuicios económicos causados por la disolución del matrimonio. Se sugiere que las ventajas de este sistema se derivan del ahorro —a nuestro entender, emocional y económico— de las siempre angustiosas investigaciones sobre culpabilidad o inocencia de los ex cónyuges. Serrano Gelys, *supra*, págs. 111–112, citando a M. Amorós Guardiola *et al., Comentarios a las reformas del derecho de familia*, Madrid, Ed. Tecnos, 1984, Vol. I, pág. 617.

[19] La nueva versión dispone:

"Si decretado el divorcio por cualesquiera de las causales que establece la sec. 321, cualesquiera de los ex cónyuges no cuenta con suficientes medios para vivir, el Tribunal de Primera Instancia podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.

"El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:

"(a) Los acuerdos a que hubiesen llegado los ex cónyuges.

"(b) La edad y el estado de salud.

"(c) La cualificación profesional y las probabilidades de acceso a un empleo.

"(d) La dedicación pasada y futura a la familia.

"(e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.

"(f) La duración del matrimonio y de la convivencia conyugal.

"(g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.

"(h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

"Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex cónyuge. La

■ Sin embargo, la reforma de 1995 no alteró la medida de "necesidad" (²⁰) como criterio para la concesión de la pensión. Es decir, se descartaron los modelos de España,(²¹) Francia e Italia, donde se concede la pensión a base del desequilibrio económico entre los ex cónyuges y no a base de la necesidad del cónyuge reclamante.(²²)

■ En cuanto a la naturaleza jurídica de este artículo en Puerto Rico, podemos destacar que al eliminarse el criterio subjetivo de la culpa, el criterio de necesidad resulta primordial para determinar la concesión de la pensión. Con ello, el modelo seguido por el legislador en las enmiendas de 1995 acerca la pensión de ex cónyuge aún más a una obligación puramente alimenticia o a lo que la doctrina ha caracterizado como un sistema objetivo para

---

pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato." 31 L.P.R.A. sec. 385.

(²⁰) Esta medida se establece al requerir que el ex cónyuge reclamante "no cuenta con suficientes medios para vivir". Art. 109 del Código Civil de Puerto Rico, *supra.*

(²¹) En 1981, como consecuencia de la extraordinaria reforma del Derecho Civil español tras la trasformación del Estado español en un Estado democrático, se introdujo en España la institución del divorcio y se incorporó la figura de la pensión de ex cónyuge por desequilibrio económico. En ese momento el ámbito jurídico europeo era dominado por el modelo francés, que había establecido la "prestación compensatoria". Dicho modelo, como señalamos en el escolio 14, había sufrido su propia enmienda y había abandonado el sistema de culpa del antiguo Art. 301, *supra.* Véanse: H. Campuzano Tome, *La pensión por desequilibrio económico de los casos de separación y divorcio*, Barcelona, Ed. Bosch, 1986, págs. 33–65; C. Lalana del Castillo, *La pensión por desequilibrio económico en caso de separación o divorcio*, Barcelona, Ed. Bosch, 1993, págs. 89–157.

(²²) En cuanto a las diferencias entre las medidas de necesidad y desequilibrio económico, la doctrina española identifica la primera con las obligaciones alimentarias de los Arts. 142 y siguientes de su Código; es decir, las obligaciones entre parientes. Así, la doctrina sostiene que la obligación de alimentos y la pensión por desequilibrio económico son instituciones distintas que responden a presupuestos y fundamentos diferentes: "La primera de ellas ... obedece a criterios de necesidad; nace con el fin de proveer lo indispensable para atender las exigencias vitales, tomando como base ... la necesidad del que solicita y los recursos del obligado." Campuzano Tome, *op. cit.*, pág. 19. De manera distinta, la pensión por desequilibrio económico constituye un presupuesto más amplio que la necesidad, en cuanto no está solamente destinado a cubrir las necesidades vitales, sino también, y fundamentalmente, a restablecer o reparar el perjuicio económico derivado de la ruptura de la vida conyugal. Íd.

determinar la pensión. Albaladejo, *op. cit.*, pág. 431. No obstante, esta nueva versión del Art. 109 no eliminó completamente las consideraciones subjetivas, ya que en los nuevos incisos (d), (e) y (f) —que discutiremos más adelante— se invita al juzgador a escudriñar la aptitud de los ex cónyuges hacia la vida matrimonial. En este sentido, el artículo enmendado sólo elimina la subjetividad parcialmente e instituye un sistema más bien cuasi objetivo.

Por otra parte, las enmiendas de 1995 también parecen vincular la obligación alimenticia del ex cónyuge más directamente con el divorcio. Al exigir, por ejemplo, que el juzgador tome en consideración la duración del matrimonio y de la convivencia conyugal al fijar la pensión (inciso (f)), se reconoce una relación entre el divorcio; es decir, la terminación de esa convivencia conyugal y el estado de necesidad que da base a la pensión. De esa manera, se contempla que la necesidad económica alegada sea consecuencia de y guarde relación con el divorcio. Según vimos, la vinculación de la necesidad con el divorcio es compatible con la doctrina española y europea en general. Acorde a lo anterior, la obligación alimentaria regulada por el Art. 109, *supra*, es una secuela de la ruptura conyugal, es decir, que nace de ese evento y va dirigida a conjugar las necesidades alimentarias derivadas del divorcio.

Esta conclusión no resulta tan sólo de la letra enmendada del Art. 109, *supra*, sino que corresponde a la estructura lógica del Código Civil. El Art. 109, *supra*, está incluido en el Libro Primero del Código Civil, Título IV, Capítulo V, dedicado a los "efectos del divorcio". Dada la naturaleza de nuestro Código como un "todo armónico",(23)

---

(23) Véase J. Lacruz Berdejo, *Elementos de Derecho Civil: parte general*, Barcelona, Ed. Bosch, 1974, Vol. I, pág. 26. "No se trata, como en las antiguas compilaciones, de una acumulación de textos inalterados de diversas épocas, desprovistos de una unidad interna referidos a una pluralidad inorgánica de supuestos concretos, conservando cada uno su valor y eficacia, sino de un sistema de reglas orgánica-

esta ubicación no responde tan sólo a la lógica de su redacción, sino que tiene también un valor normativo. El Código Civil establece un artículo particular para las necesidades que son resultado del divorcio,[24] otro para las necesidades alimentarias mientras está pendiente el divorcio[25] y otro para aquellas que surgen mientras el alimentista está casado o tiene parientes dentro de los grados especificados.[26] Las necesidades atendidas en el contexto del parentesco, matrimonial o de otro tipo, pueden presentarse en cualquier momento y por cualquier causa, ya que tienen un carácter genérico. Es forzoso concluir que cuando la necesidad del reclamante esté vinculada al divorcio, o surja como consecuencia de éste, deben reclamarse alimentos al ex cónyuge al amparo del Art. 109, *supra*. Sólo si el ex cónyuge reclamado no cuenta con medios suficientes, es que corresponde a los parientes enumerados en el Art. 143, *supra*, suplir las necesidades del reclamante, siguiendo el orden de prelación del Art. 144, *supra*. Este es el esquema normativo resultante de la lógica estructural del Código Civil y es compatible también con nuestras reglas de interpretación de normas específicas y normas generales.

Consideramos, además, que esta interpretación de la relación entre los artículos mencionados es cónsona, no sólo con la regulación de los alimentos entre parientes y los ex cónyuges en disposiciones separadas, sino con el efecto radical del divorcio en nuestro ordenamiento.[27] Asimismo, está en armonía con nuestra jurisprudencia, que reconoce la separación clara de cada una de estas obligaciones. Por eso, en *Meléndez v. Tribunal Superior*, 77

---

mente subordinadas y coordinadas, con pretensiones de generalidad y plenitud, agrupadas por institutos y redactadas en forma escueta y concisa ....”

[24] Art. 109 del Código Civil de Puerto Rico, *supra*.

[25] Art. 100 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 343.

[26] Art. 143 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 562.

[27] Véase el Art. 105 del Código Civil, *supra*, que dispone: “El divorcio lleva consigo la ruptura completa del vínculo matrimonial y la separación de propiedad y bienes de todas clases entre los cónyuges.”

D.P.R. 535, 541 (1954), señalamos: "los alimentos de la mujer casada, en su carácter de cónyuge, y los que se conceden a la mujer que ha obtenido el divorcio, no se rigen por las mismas disposiciones legales." Más adelante indicamos: "Una vez disuelto el vínculo matrimonial por el divorcio ... cesa la obligación que bajo el artículo 143 tienen los cónyuges." Íd.

▉ Debemos señalar que la interpretación que adoptamos en nada altera el asunto medular resuelto en *Suria v. Fernández Negrón*, 101 D.P.R. 316 (1981), en cuanto a la imprescriptibilidad de la obligación alimentaria entre ex cónyuges, si bien los fundamentos de dicha decisión, relacionados con la necesidad de aliviar la situación "desesperada" de la mujer divorciada, no están necesariamente vigentes bajo el ordenamiento actual.[28] La acción bajo el citado Art. 109 no prescribe, según resolvimos en *Suria v. Fernández Negrón*, supra, siempre que las peticiones de alimentos entre ex cónyuges, aunque puedan reclamarse *ad perpetuam*, estén vinculadas en relación de causalidad con el divorcio.[29] La necesidad de la pensión puede surgir, por ejemplo, por la terminación del deber de socorro entre los esposos o por la falta del sustento cotidiano al que había estado acostumbrado el cónyuge reclamante.

▉ En conclusión, resolvemos que los Arts. 109 y 142 del Código Civil de Puerto Rico, *supra*, son disposicio-

---

[28] En ese caso resolvimos, entre otras cosas, que la pensión dispuesta en el Art. 109, *supra*, es una institución a favor de la mujer inocente que, debido a su carácter alimentario, no está sujeta a prescripción. Concluimos que una mujer podía reclamar alimentos de su esposo doce años después del divorcio. La opinión estuvo fundamentada en fuertes consideraciones de índole moral y por esa razón fue criticada por la doctrina. Véase Serrano Geyls, *supra*.

[29] Según Serrano Geyls, la pensión "post divorcio ... debería fundarse exclusivamente en la situación económica de los ex cónyuges prevaleciente a la fecha de decretarse el divorcio y debería tener una duración limitada ... para que el cónyuge pueda recuperarse económicamente, con la sola excepción de los casos de incapacidad temporaria o permanente del alimentista para trabajar, en cuyo caso, el término de la pensión podría extenderse. Me parece injusto y enteramente contrario al divorcio vincular, mantenerse ese derecho vitaliciamente como si las partes siguieran casadas, o como si un ex cónyuge fuera responsable de las necesidades del otro *que no se originaron en el divorcio*". (Énfasis suplido.) Serrano Gelys, *supra*, pág. 112.

nes separadas que se refieren a obligaciones distintas. Disponemos, además, que sólo debe recurrirse a los parientes indicados en el Art. 142 cuando el ex cónyuge reclamado no pueda sufragar los alimentos del ex cónyuge reclamante. En este sentido, la decisión del Tribunal de Apelaciones es correcta.

## D. *Los ocho criterios añadidos en 1995*

Las conclusiones anteriores atienden el problema principal que suscita este caso, mas no lo resuelve por completo. El Tribunal de Apelaciones determinó que la recurrida era acreedora a una pensión de ex cónyuge, si bien devolvió el caso para que instancia determinara la cuantía. Respecto a esto, el peticionario argumenta que la demandante no demostró que cumplía con el factor de necesidad, pues no presentó prueba sobre incapacidad o imposibilidad para generar ingresos. Parece entender que la nueva redacción del Art. 109 impone una carga probatoria particular a quien reclama alimentos. En ese sentido, sugiere que la parte reclamante de alimentos debe demostrar específicamente que posee alguna incapacidad física o mental, o que no es capaz de generar ingresos.

Algunos miembros de este Tribunal acogen esta teoría y concluyen que las circunstancias añadidas al Art. 109, *supra*, en 1995 constituyen criterios valorativos que deben considerarse tanto para decidir si se concede la pensión como para determinar su cuantía. Aplicando este concepto concluyen, específicamente, que por razón de las enmiendas la cónyuge reclamante en este caso tiene que traer prueba sobre las gestiones realizadas por ella para procurarse un empleo y sobre enfermedades o incapacidades que la inhabiliten para ejercer un trabajo. A la luz de lo antes dicho, resulta necesario aclarar el alcance de las circunstancias añadidas en 1995.

Como ya explicamos anteriormente, el modelo normativo del listado de circunstancias incorporadas al Art. 109,

*supra*, en 1995 es el Art. 97 del Código Civil español. La disposición española dota al cónyuge "al que la separación o divorcio produce desequilibrio económico" respecto al otro, del "derecho a una pensión que *se fijará* en la resolución judicial, teniendo *en cuenta*", entre otras, las circunstancias que corresponden a las que fueron incorporadas a nuestro Art. 109 en 1995. (Énfasis en el original suprimido y énfasis suplido.) M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, 2da ed., Madrid, Ed. Edersa, 1982, Vol. II, pág. 415.

Expresado de esa forma, la doctrina española ha interpretado que el juez debe considerar estas ocho circunstancias "para fijar la cuantía de la pensión *y no para decidir si procede o no a concederla*, pues ello debe hacerse conforme a lo establecido en el primer párrafo del artículo 97". (Énfasis suplido.) Albaladejo, *op. cit.*, pág. 432.

Al añadir las circunstancias enumeradas en el Art. 97 del Código Civil español a nuestro Art. 109, el legislador varió el texto introductorio. Según nuestro texto, "[e]l Tribunal *concederá* los alimentos ... *teniendo en cuenta*" las circunstancias ya mencionadas". (Énfasis suplido.) Esta redacción sugiere que los criterios añadidos simplemente buscan "nutrir la conciencia del juzgador al fijar el monto de la pensión". *Díaz v. Alcalá*, 140 D.P.R. 959, 978 (1996). El examen del historial legislativo, en particular la explicación sobre el "alcance de la medida" del Informe de la Comisión de Gobierno sobre el P. del S. 652 de 5 de abril de 1995, 12ma Asamblea Legislativa, 3ra Sesión Ordinaria, no arroja luz en cuanto a si esa diferencia indica la intención legislativa de que las circunstancias añadidas sirvieran también para determinar la procedencia de la pensión. Explica el Informe que

> ... la concesión de alimentos al ex cónyuge debe basarse en otros criterios además que [sic] la culpa. Hasta ahora, los criterios tradicionales están basados en la necesidad del alimentista y los recursos económicos del obligado. A estos efectos la Comisión de Gobierno considera necesario añadir algunas cir-

cunstancias que podrá también tomar en consideración el juez *en la determinación de alimentos al ex-cónyuge,* adoptados del artículo 97 del Código Civil español. *El propósito de esta enmienda es contribuir a la orientación de la discreción judicial y satisfacer las necesidades de los ex-cónyuges* sobre las bases reales de la institución del matrimonio. (Énfasis suplido.) Informe, *supra,* pág. 4.

En *Díaz v. Alcalá,* supra, al referirnos a los alimentos de ex cónyuge a la luz del Art. 109, *supra,* luego de las enmiendas de 1995, citamos *in extenso* la doctrina española, en particular aquella tocante a la naturaleza de la pensión compensatoria entre ex cónyuges. Apoyados en esta corriente doctrinal, dijimos específicamente que los ocho criterios añadidos al Art. 109 "serán los elementos de juicio judiciales *para fijar el monto* de cualquier pensión post divorcio". (Énfasis suplido.) *Díaz v. Alcalá,* supra, pág. 982. El análisis requerido a propósito de la controversia específica del caso nos lleva a reiterar que la mayoría de las enmiendas de 1995 aplican al monto de la pensión. Los únicos elementos verdaderamente nuevos añadidos al Art. 109 en 1995, *supra,* son aquellos que resultan pertinentes para fijar el monto de la pensión, según expusimos en *Díaz v. Alcalá,* supra. Ahora bien, *ninguno* de los ocho criterios añadidos, ni los nuevos ni los que ya estaban prefigurados en la jurisprudencia, *añade una carga probatoria específica a la reclamación.* Veamos el listado más de cerca.

1. *Acuerdos a los que hubiesen llegado los ex cónyuges*

En España, la posibilidad de que los cónyuges hubiesen llegado a ciertos acuerdos guarda relación con el Art. 90 de su Código Civil, que regula los acuerdos voluntarios de los ex cónyuges referentes a la regulación de los efectos de la nulidad, separación o divorcio, y aquellos acuerdos relacionados con la regulación de la separación o divorcio por consentimiento mutuo. Estos acuerdos deben referirse, entre otros extremos, a la pensión "que conforme al artículo 97 correspondiere satisfacer, en su caso, a uno

de los cónyuges". Albaladejo, *op. cit.*, pág. 372. Aunque en Puerto Rico no hay una disposición similar, la posibilidad de un acuerdo de este tipo puede ser pertinente tanto para la concesión de la pensión como para determinar su cuantía. Sin embargo, no importa lo pactado previamente por los cónyuges, la existencia de un acuerdo no sustituye, sin más, el criterio primordial de necesidad establecido en el primer párrafo del Art. 109, *supra.*[30]

## 2. *La edad y el estado de salud*

Este factor, según la doctrina, se refiere tanto a la edad y salud del reclamante como a la del reclamado. El juzgador debe ser cuidadoso al evaluar estas circunstancias debido al efecto que éstas pueden tener sobre la productividad de un individuo. Explica el profesor Serrano Geyls que este parámetro sirve "para determinar la vida ocupacional que le queda a una persona".[31]

## 3. *La cualificación profesional y probabilidades de empleo*

Las circunstancias incluidas en este inciso 3 también aplican a ambos ex cónyuges, puesto que la cualificación profesional y las probabilidades de empleo son inversamente proporcionales a la necesidad y directamente proporcionales a la capacidad para sufragarla.[32]

No podemos concluir que la consideración de estas circunstancias imponga al ex cónyuge reclamante la obliga-

---

[30] Al respecto, véase *Cantellops v. Cautiño Bird*, 146 D.P.R. 791, 806 (1996), donde dijimos expresamente que "por estar la institución de alimentos revestida del mayor interés público, cualquier acuerdo que se hubiere efectuado, no tiene, ni puede tener carácter invariable, o constituir una renuncia a derechos futuros de alimentación".

[31] Serrano Geyls, *supra*, pág. 117. Distinto a otros miembros de este Tribunal, consideramos que una persona de cincuenta y un años de edad *no es joven para propósitos de insertarse, por primera vez, en el mercado de trabajo.*

[32] En cuanto al criterio de "cualificación profesional y probabilidades de empleo", tenemos que rechazar la conclusión de miembros de este Tribunal a los efectos de que la recurrida está capacitada para trabajar. Entendemos que correspondería, en cualquier caso, al foro de instancia determinar la capacidad de trabajo de la peticionaria.

ción específica de demostrar que no es joven, que no está en buen estado de salud y que no tiene capacidad para trabajar. Más bien, son circunstancias relacionadas con la necesidad del ex cónyuge reclamante y la capacidad de aportación del otro ex cónyuge que no constituyen nuevos criterios sobre los cuales debe presentarse prueba, sino que fueron elaborados jurisprudencialmente, junto a muchos otros, para guiar la discreción del juzgador respecto a la solicitud del ex cónyuge reclamante. Véanse: *Cantellops v. Cautiño Bird*, 146 D.P.R. 791 (1998); *Soto López v. Colón*, 143 D.P.R. 282 (1997); *Díaz v. Alcalá*, supra; *González v. Suárez Milán*, supra; *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981); *Casiano v. Tribunal Superior*, 101 D.P.R. 327 (1973); *Rubio Sacarello v. Roig*, 84 D.P.R. 344 (1962); *Meléndez v. Tribunal Superior*, 77 D.P.R. 535 (1954); *Puigdollers v. Monroig*, 26 D.P.R. 310 (1918).

### 4. *La dedicación pasada y futura a la familia*

La incorporación de este factor en Puerto Rico ha sido criticada, porque responde a un sistema compensatorio como el español y no alimentario como el nuestro. R. Serrano Geyls, *La nueva ley de pensiones alimentarias post-divorcio*, 30 Rev. Jur. U.I.P.R. 97, 118 (1996). En aquel sistema, esta circunstancia se utiliza para compensar al ex cónyuge que ha tenido gran dedicación a la familia. García Cantero señala al respecto que "en estos casos en que el sacrificio de uno ha sobrepasado lo normal, parece justo compensarle de alguna manera con una notable pensión por desequilibrio". Albaladejo, *op. cit.*, pág. 434. Se trata, pues, de un criterio de carácter subjetivo que exige que el juzgador examine la aptitud del cónyuge hacia la vida familiar *al fijar la cuantía* de la pensión.

Ahora bien, la dedicación pasada y futura a la familia no debe utilizarse ni para conceder ni para negar el derecho a la pensión. Considerar la dedicación a la familia como factor para determinar *la concesión* de la pensión

tiende a acercarnos a la antigua figura de la culpa, en particular para evaluar negativamente el grado de dedicación demostrado. Esa aplicación sería incompatible con la intención del legislador de fundamentar la concesión de la pensión tan sólo en las circunstancias económicas de los ex cónyuges, descartando expresamente la relación culpa-inocencia.[33]

5. *La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge*

La consideración de esta circunstancia también tiene un fuerte carácter indemnizatorio y, según nos señala la doctrina, está vinculada con la figura del enriquecimiento injusto.[34] La lógica indica que la colaboración plena en las actividades del ex cónyuge reclamado debe suponer un incremento en la pensión concedida.

6. *La duración del matrimonio y de la convivencia conyugal*

Al igual que el factor anterior, éste tiene naturaleza compensatoria más que alimentaria. En su versión española ha sido interpretado como un ejemplo del carácter indemnizatorio de la pensión y debe entenderse como que "a mayor convivencia mayor pensión".[35]

La consideración de los incisos (d), (e) y (f) del Art. 109, *supra*, requiere un *caveat*. Todos mencionan cir-

---

[33] Nos parece que la opinión disidente no sopesa el criterio de "dedicación pasada y futura a la familia". La reclamante dedicó veintisiete años a la familia constituida con el reclamado, dedicándose precisamente a las funciones tradicionales del hogar. Más aún, cuida de su nieta, lo cual constituye, a nuestro entender, "la dedicación futura" contemplada en este criterio y no una fuente de ingreso desaprovechada, según lo percibe la opinión disidente. Todo lo anterior puede ser de gran pertinencia a la hora de determinar la cuantía de la pensión.

[34] Véase Serrano Geyls, *supra*, págs. 118–119.

[35] Albaladejo, *op. cit.*, pág. 308. Nótese que en este caso las partes estuvieron casadas durante veintisiete años, lo cual resulta pertinente al criterio de duración del matrimonio y de convivencia conyugal y, por lo tanto, relevante al momento de determinar la cuantía de la pensión.

cunstancias que exigen que el juzgador examine la aptitud de los ex cónyuges hacia su previa vida conyugal. No hay duda de que el legislador considera importante la aportación y ayuda que brindó el ex cónyuge reclamante a la convivencia y situación conyugal mientras estaba vigente el matrimonio. Ahora bien, la incorporación al referido Art. 109 de este segundo grupo de circunstancias, que indubitadamente son de carácter subjetivo, tiene que verse en el contexto de la decisión de eliminar la consideración de la relación culpa-inocencia como factor para la concesión de la pensión. Por eso, concluimos que las circunstancias incluidas en los incisos (d), (e) y (f) de este artículo necesariamente guardan relación con la cuantía de la pensión y no con su concesión. Debe hacerse particular hincapié en que, una vez determinada la necesidad, por cualquier medio, los factores contenidos en estos incisos no pueden utilizarse para descartar la pensión.

7. *El caudal y medios económicos y las necesidades de uno y otro cónyuge*

8. *Cualquier otro factor que considere apropiado dentro de las circunstancias del caso*

Estos dos últimos factores, añadidos al enmendar el Art. 109, *supra*, resultan básicamente redundantes e innecesarios. El primero es una paráfrasis del criterio de "necesidad" establecido en el primer párrafo del Art. 109, que establece la pensión para el ex cónyuge "que no cuente con medios suficientes para vivir". Íd. Además, reitera una consideración reconocida por la jurisprudencia que surge de la lógica interna de la figura de la necesidad como presupuesto de la pensión de ex cónyuge; a saber, la capacidad del ex cónyuge reclamado para proveerla. En cuanto al último criterio, el legislador confirma lo que ya se infiere de

la primera oración del segundo párrafo, es decir, que los criterios añadidos no son *numerus clausus*.[36]

En resumen, si observamos detenidamente las enmiendas de 1995 nos percatamos de que ninguna de éstas debe interpretarse de manera contraria a la clara intención legislativa de descartar la culpa como presupuesto para conceder o negar la pensión, como tampoco la de eliminar las diferencias entre los géneros. Igualmente claro es el mandato legislativo a los tribunales, que les requiere conceder o negar la pensión sobre la base de la necesidad del ex cónyuge reclamante y la capacidad económica del ex cónyuge a quien se le reclama. Nos parece que ese parámetro es suficiente para dirigir la sana discreción de los Tribunales de Primera Instancia.

Dado su carácter de *numerus apertus*, las ocho circunstancias añadidas en 1995 son más bien ejemplos de aquellas que puede tomar en cuenta un juez al determinar la pensión de ex cónyuge. Interpretarlas como que imponen al reclamante una obligación específica de prueba, constituye una interpretación demasiado restrictiva y contraria al espíritu solidario y alimentario que rige esta figura.

La alegación suficiente para reclamar la pensión de ex cónyuge es, por lo tanto, aquella que establezca que se carece de medios "suficientes para vivir". Para demostrar esa necesidad sólo se requiere presentar cualquier prueba pertinente tendente a establecer que no se cuenta con dichos medios suficientes para vivir y no necesaria-

[36] Debemos señalar, como ejemplo de uno de los criterios adicionales que pueden considerarse en este caso para evaluar la cuantía de la pensión, que la demandante señora Jaime Jaime vive en la antigua casa conyugal. Éste es claramente uno de los elementos que las partes pueden acordar al amparo del Art. 90 del Código Civil español y que la doctrina interpretativa del Art. 97 de dicho código reconoce como circunstancia a considerar al fijar el monto de la pensión. Serrano Geyls, *supra*, pág. 121.

mente que se es anciano, incapacitado o incapaz de trabajar.

## III

En su sentencia de 1 de julio de 2002, el Tribunal de Primera Instancia hizo determinaciones de hechos sobre varias de las circunstancias añadidas al Art. 109 en 1995, entre ellas, la edad de la demandante, su preparación académica, la asunción de deudas por el ex cónyuge demandado y el uso continuo del anterior hogar conyugal. Sin embargo, no las tomó en consideración al emitir su decisión. Tampoco consideró otros factores, como la dedicación de la reclamante a la familia, la duración del matrimonio y la convivencia conyugal, sobre los cuales se presentó la prueba. Resulta inaceptable que el tribunal inferior haya elaborado determinaciones de hechos sobre varios de estos aspectos sin otorgarles mayores consecuencias, pues despachó la controversia fundamentándose equivocadamente en que la demandante debía reclamar alimentos, en primer lugar, a sus parientes al amparo del Art. 142 del Código Civil de Puerto Rico, *supra*.

Una interpretación objetiva de los hechos adjudicados por el tribunal de instancia nos lleva a resolver que no erró el Tribunal de Apelaciones al conceder la pensión solicitada y ordenar la devolución del caso al Tribunal de Primera Instancia para que determine el monto de la pensión. No hay duda que ese tribunal está en mejor posición para sopesar la necesidad demostrada por la ex esposa y la situación económica del ex esposo.

Por los fundamentos anteriormente expuestos, *se confirma la decisión recurrida y se devuelve el caso al Tribunal de Primera Instancia para que proceda conforme a lo aquí establecido.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri emitió una

opinión de conformidad. El Juez Asociado Señor Rebollo López disintió con una opinión escrita. El Juez Asociado Señor Rivera Pérez disintió sin opinión escrita.

— O —

Opinión de conformidad emitida por el Juez Asociado Señor Fuster Berlingeri.

Aunque estoy conforme con la opinión del Tribunal, me ha parecido menester hacer unas breves expresiones particulares, para enfatizar aspectos de lo que aquí hoy resolvemos.

En el caso de autos tenemos dos asuntos medulares planteados ante nos. El primero de ellos es si una persona divorciada que tiene necesidad de alimentos debe reclamarlos a su ex cónyuge, en primer lugar, al amparo del Art. 109 del Código Civil, 31 L.P.R.A. sec. 385, o si debe acudir antes a sus parientes más próximos al amparo del Art. 143 de ese Código, 31 L.P.R.A. sec. 562.

Un examen de nuestra jurisprudencia relativa al Art. 109 referido lleva inexorablemente a la conclusión de que el sentido originario de esa disposición incluía la intención legislativa de que si la persona que reclama los alimentos cumplía con los requisitos correspondientes, *la obligación de concederlos le correspondía primeramente al ex cónyuge*. Nunca lo resolvimos precisamente así, *pero ello estaba claramente sobrentendido*. Véanse: *Meléndez v. Tribunal Superior*, 77 D.P.R. 535, 542 (1954); *Suria v. Fernández Negrón*, 101 D.P.R. 316, 319–320 (1973); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 613 (1981). Esa primordial obligación del ex cónyuge —originalmente del marido— *quien responde antes que los parientes cercanos*, realmente nunca ha estado en dudas. Hoy tenemos, pues, la ocasión para afirmarla expresamente.

Es menester advertir enfáticamente, además, que aunque la obligación del ex cónyuge referida nace de disposi-

ciones estatutarias y de relaciones humanas distintas a las de los parientes cercanos, *ello no significa que las respectivas obligaciones alimentarias tengan un carácter o unos propósitos diferentes*. Por el contrario, según hemos resuelto antes, ambas comparten en gran medida "las características esenciales que tiene la institución de los alimentos". Como bien reconoce la mayoría del Tribunal aquí, y como habíamos pautado antes en *González v. Suárez Milán*, 131 D.P.R. 296, 301 (1992), ambas están investidas del mayor interés público, porque en el fondo ambas surgen del derecho fundamental de todo ser humano a existir y a desarrollar plenamente su personalidad. Es decir, ambas se imponen como parte de "las condiciones necesarias de la vida progresiva de la humanidad", *González v. Suárez Milán*, supra; ambas se originan en "un propósito de solidaridad humana", *Suria v. Fernández Negrón*, supra.

No debe perderse de vista esta naturaleza esencial común a ambas obligaciones alimentarias, porque de ella se han de derivar las respuestas correspondientes a las interrogantes que puedan surgir sobre estas obligaciones en otros casos o situaciones.

I

El segundo asunto planteado en el caso de autos es relativo al significado de la importante enmienda que se le hizo al Art. 109, *supra*, en 1995, cuando —*inter alia*— el legislador añadió ocho criterios que deben tenerse en cuenta al conceder los alimentos dispuestos en esa disposición.

Sobre este otro asunto, cabe enfatizar que ya habíamos interpretado el significado y el alcance de la referida modificación del Art. 109 del Código Civil, *supra*. En *Díaz v. Alcalá*, 140 D.P.R. 959 (1996), hicimos claro que los ocho criterios en cuestión se refieren a circunstancias que un

tribunal debe ponderar *"al fijar el monto de la pensión"* (íd., pág. 978); o sea, *"para fijar la cuantía"*. Íd., pág. 980. Lo reiteramos por tercera vez en *Díaz v. Alcalá*, supra, pág. 982, cuando señalamos que estos criterios *"precisamente serán los elementos de juicio judiciales para fijar el monto de cualquier pensión post divorcio"*. (Énfasis en el original.) No se trata, pues, de requisitos que se han de considerar primordialmente para decidir *si se concede o no la pensión.* Más bien, como claramente se señala en el propio Art. 109 del Código Civil, *supra*, son criterios que el tribunal debe considerar al decidir *cuánto* de alimentos ha de asignarse. Expone dicho artículo, en lo pertinente:

> El Tribunal concederá los alimentos a que se refiere el párrafo anterior, tomando en cuenta, entre otras, las siguientes circunstancias .... 31 L.P.R.A. sec. 385.

El claro propósito de la referida enumeración de criterios a tomar en cuenta es que el tribunal pueda hacer la evaluación más justa posible de la *cuantía* de la pensión alimenticia que reclama un ex cónyuge al otro, una vez se ha determinado su procedencia, la que, a su vez, depende de que la parte reclamante tenga necesidad de ella. Eso fue lo que correctamente pautamos antes en *Díaz v. Alcalá*, supra.

Nótese, además, que hubo otro aspecto fundamental que también establecimos en *Díaz v. Alcalá*, supra, sobre este asunto. Allí claramente indicamos que las enmiendas al citado Art. 109 realizadas en 1995 modificaban *"sustancial y significativamente el alcance y la visión legislativa de la pensión post divorcio"*. (Énfasis suplido.) *Díaz v. Alcalá*, supra, pág. 977. Adoptamos por referencia, en lo pertinente, la conceptualización española de tal pensión y señalamos que se trataba *"de un acto de justicia equitativa legislativa que trasciende la antigua noción de divorcio por culpa"*. (Énfasis suplido y en el original.) Íd., pág. 979. Explicamos que su finalidad incluye atender el desequilibrio económico resultante de un divorcio, cuanto éste aparejaba

un empeoramiento de la posición material de uno de los cónyuges. Citamos al comentarista Gabriel García Cantero para hacer referencia específica a la necesidad de proteger a la mujer quien, estando casada, dedicó su vida al hogar y por carecer de una especialización profesional habría de sufrir un grave deterioro en su situación económica por razón del divorcio.

El Art. 109, *supra*, en vigor existe precisamente para procurar que se trate con equidad a una ex cónyuge como la del caso de autos; para que una mujer que se dedicó plenamente a las labores domésticas como madre y esposa, no sufra de repente un grave desequilibrio económico al ser enfrentada con un divorcio; para protegerla de una única opción de tenerse que ir a trabajar como empleada doméstica. *Díaz v. Alcalá*, supra, pág. 980.

En *Díaz v. Alcalá*, supra, reconocimos la realidad innegable de que con gran frecuencia la mujer casada se entrega por muchos años al cuidado del esposo y de los hijos, y sacrifica así la época en que pudo desarrollar sus cualidades intelectuales y profesionales, para luego encontrarse al momento de la crisis conyugal con un grave desvalimiento económico. Nos adherimos a la posición de que por razones de *equidad*, tal situación desvalida no puede permitirse. Siguiendo la tendencia moderna europea, resolvimos que, mediante el Art. 109, *supra*, se procura no sólo proveer asistencia al ex cónyuge que la necesita sino, además, intentar una reparación de los prejuicios económicos causados por la disolución del matrimonio. Véase G. García Garrido, *La Pensión Compensatoria*, XXV Rev. Jur. U.I.A. 449 (1991). El ex cónyuge que no cuente con medios suficientes para vivir tiene un claro derecho a ser socorrido por el otro que tiene recursos, cuando el divorcio aparejó para aquel un deterioro económico con respecto a su situación anterior en el matrimonio. Para ello existe precisamente el Art. 109 del Código Civil, *supra*. Esta renovada concepción justiciera del Art. 109, *supra*, afín a la que ex-

presamos en *Suria v. Fernández Negrón*, supra, fue claramente formulada en *Díaz v. Alcalá*, supra, y forma parte integral de nuestro haber jurisprudencial. Es claramente aplicable al caso de autos, como lo hace la mayoría del Tribunal en su opinión aquí.

— O —

Opinión disidente emitida por el Juez Asociado Señor Rebollo López.

Lamentablemente no podemos suscribir, y endosar con nuestro voto, la opinión emitida por la mayoría en este caso. Ello por entender que la opinión no sólo contradice el claro texto de la Ley Núm. 25 de 16 de febrero de 1995,[1] 31 L.P.R.A. sec. 385, y su historial legislativo, sino que, además, crea un peligroso precedente que —como el bumerán— regresará a este Tribunal, ante el descalabro jurídico que, sin lugar a dudas, creará en los foros inferiores. Veamos.

I

Tal y como surge de la opinión mayoritaria, el Sr. Israel Morales Vargas, demandante peticionario, y la Sra. Adoración Jaime Jaime, demandada recurrida, contrajeron matrimonio en 1974 y se divorciaron el 5 de septiembre de 2001.[2] *A raíz de este divorcio, el señor Morales Vargas asumió todas las deudas gananciales ascendentes a $480 mensuales y una deuda de $1,278 de uno de sus hijos. La señora Jaime, por su parte, permaneció en posesión y disfrute de los bienes y efectos propios del hogar.*

---

[1] Ley que enmendó el Art. 109 del Código Civil, 31 L.P.R.A. sec. 385.

[2] Durante su matrimonio procrearon seis hijos; *todos mayores de edad al momento del divorcio.*

A un mes y medio de obtenido el divorcio, la señora Jaime presentó una petición de alimentos, de ex cónyuge, al amparo del Art. 109 del Código Civil, 31 L.P.R.A. sec. 385. Como *único fundamento* a su petición, la señora Jaime alegó que "carece de suficientes medios para vivir" y que "nunca ejerció ningún trabajo por el cual percibiera un salario".([3]) Además, señaló que su ex cónyuge cuenta con medios económicos suficientes para satisfacer la pensión solicitada por ella.

Oportunamente, el señor Morales Vargas presentó su oposición a la moción formulada por su ex esposa, y adujo que debía ser *únicamente* considerada a la luz del Art. 144 del Código Civil, 31 L.P.R.A. sec. 563 —sobre alimentos entre parientes— y no al amparo del referido Art. 109. Alegó, en síntesis, que la obligación del ex cónyuge presentada en el Art. 109, ante, es de carácter subsidiario y se torna exigible sólo cuando ninguno de los obligados a alimentar por el citado Art. 144 puede hacerlo. Argumentó, por último, que en este caso su ex esposa vive en el hogar "conyugal" con dos de sus hijos —ambos mayores de edad— quienes, según alegó, pueden aportar a sus gastos.

Luego de varios trámites procesales, el 1 de julio de 2002 el Tribunal de Primera Instancia, Sala Superior de Humacao, emitió una resolución en la cual realizó las determinaciones de hecho siguientes:

> 1. La peticionaria [Jaime Jaime] nunca ha ejercido otra labor que la de madre, esposa y ama de casa. *Cursó hasta noveno grado de escuela intermedia. Cuenta con la edad de cincuenta y un años (51).* Durante el matrimonio la única fuente de ingresos provino de Dos [sic] Israel Morales Vargas. El demandado [demandante, Morales Vargas] hace cinco (5) años comenzó a trabajar en la Corporación del Fondo del Seguro del Estado en el área de archivo.
> 2. La peticionaria declaró que actualmente solamente cuenta con $180.00 mensuales que recibe por concepto del Programa

---

([3]) Explicó que durante su matrimonio se dedicó a cuidar sus hijos y a ser ama de casa.

de Asistencia Nutricional para ella y su hija. Sus gastos mensuales son: comestibles $240.00, ropa $50.00, efectos personales $15.00, agua $15.00, energía eléctrica $80.00, transportación pública $15.00. Continúa haciendo uso del Plan Médico de su esposo hasta abril de 2002, fecha en que cesará dicho beneficio. Tiene gasto mensual [sic] en medicina de aproximadamente $20.00 a $25.00. En cuanto a los demás gastos se sometió la Planilla de Información Económica en evidencia. *Conforme a la misma la peticionaria tiene un gasto mensual de $597.33.*

3. *También declaró que reside en el hogar ganancial y está en posesión y disfrute de los bienes y efectos propios del hogar.* Actualmente *viven en su hogar dos de sus hijos, ambos son mayores de edad* [sic]. Uno de ellos está casado y vive con su esposa y una hija, también en el hogar de la peticionaria. La demandada *no trabaja*, se ocupa de las tareas propias del hogar *y ha cuidado de la nieta mientras su hijo y la esposa de éste trabajan.*

4. Los servicios de la vivienda están a nombre del demandado, excepto el teléfono que está a nombre del hijo que vive en el hogar quien lo paga porque es suyo. *Durante el matrimonio hubo deudas gananciales pero el demandado no le dejó deudas, ya que él las asumió.*

5. *El demandado [demandante] trabaja en el Fondo del Seguro del Estado en Caguas y tiene un ingreso de $2,000.00 mensuales. Recibe un Bono de Navidad de $1,500.00.* No tiene ningún otro tipo de trabajo. Reside con sus padres, quienes cuentan con la edad de 84 y 82 años respectivamente, en la residencia de éstos. *Él paga todas las deudas gananciales que ascienden a $480.00 mensuales,* además de una deuda de teléfono perteneciente a su hijo *y que él tuvo que asumir. Dicha deuda era de $1,278.00 y paga $125.00 mensuales.* Estudia los sábados un curso de reparación de computadoras. Alegó padecer de desbalance y tiene un gasto mensual de medicamentos de $25.00 los cuales no cubre el plan. Tiene un préstamo de estudiante que paga $120.00 mensuales. Tiene un gasto de luz de $100.00 bi-mensual. (Énfasis suplido.) Resolución del Tribunal de Primera Instancia, págs. 2–4.

Tomando en consideración estas determinaciones de hecho, el foro primario declaró *sin lugar* la solicitud de alimentos presentada por la señora Jaime Jaime, concluyendo que *no* procedía la concesión de una pensión alimenticia de ex cónyuge a su favor, pues "para que proceda la acción la promovente debe carecer de medios para

subsistir y cubrir sus necesidades alimentarias *[y no tener]
otra forma de obtener alimentos que necesita* [sic], excepto
reclamarlos al ex-cónyuge bajo el Artículo 109 del Código
Civil". Resolución del Tribunal de Primera Instancia, pág.
5.

Al fundamentar su determinación, el tribunal de instan-
cia llamó la atención hacia el hecho de que la peticionaria

> ... cuenta con descendientes y colaterales capacitados para
> ayudarle, dos de los hijos y la familia de uno de ellos, disfrutan
> y se benefician de la posesión de los bienes muebles e inmue-
> ble que ostenta la [señora Jaime], sin pagar canon o merced
> alguna por ello. Resolución del Tribunal de Primera Instancia,
> pág. 6.

Asimismo, señaló que "[h]ay que reconocer que el [señor
Morales Vargas] asumió todas las deudas de la extinta so-
ciedad legal de gananciales, no dejando deuda alguna a la
[señora Jaime]".([4]) Resolución del Tribunal de Primera Ins-
tancia, pág. 6.

Inconforme con esta determinación, la señora Jaime
Jaime acudió al Tribunal de Apelaciones, el cual *revocó* el
dictamen del foro primario.([5]) Insatisfecho con el dictamen
emitido por el foro apelativo intermedio, el señor Morales
Vargas acudió ante este Tribunal —vía *certiorari*— y soli-
citó la revisión de dicha determinación, recurso que fue
*expedido* el 14 de febrero de 2003.([6])

---

([4]) El foro primario concluyó que la "promovente [tiene que] reclamar[le] en
primer lugar a sus descendientes, en segundo lugar a sus ascendientes y en tercer
lugar a sus parientes colaterales, hermanos y sobrinos". Resolución del Tribunal de
Primera Instancia, pág. 5. Explicó que si éstos no pueden sufragar los alimentos que
se reclaman, "entonces es de aplicación la obligación del ex-cónyuge contemplada en
el Art. 109". Íd.

([5]) El referido foro apelativo resolvió que "procede imponerle una pensión ali-
mentaria a Israel Morales Vargas [a favor de Jaime Jaime]". Ello, en atención a que,
según su criterio, "aun estableciendo que el ex-cónyuge reclamante puede acudir a
sus parientes para alimentos, entendemos que en primera instancia éstos deben ser
reclamados al ex-cónyuge, a tenor con el Artículo 109, supra". Sentencia del Tribunal
de Circuito de Apelaciones, pág. 11.

([6]) El 30 de junio de 2003, habiendo recibido sólo el alegato del demandante
peticionario, le concedimos un término de veinte días a la señora Jaime Jaime para
que compareciera ante este Tribunal. El 20 de agosto de 2003, aún sin la compare-
cencia de la recurrida, se dio por *sometido* el recurso.

Hoy una mayoría de este Tribunal *confirma* la determinación del Tribunal de Apelaciones al concluir, en primer lugar, que cuando la necesidad del reclamante está vinculada al divorcio o surge como consecuencia de éste, procede reclamar alimentos al ex cónyuge al amparo del Art. 109 del Código Civil, ante, y que sólo puede recurrirse a los parientes enumerados en el Art. 143 (31 L.P.R.A. sec. 562) cuando éste no cuenta con medios suficientes para sufragar dichos alimentos.

En segundo lugar, la mayoría concluye que para reclamar esta pensión de ex cónyuge es suficiente con que el reclamante pruebe un estado de necesidad, *lo cual, según la mayoría, se logra con presentar "cualquier" prueba tendente a demostrar la carencia de medios "suficientes para vivir".*

## II

De entrada, precisa puntualizar que estamos totalmente conformes con la conclusión a la que llega la mayoría en cuanto a que los Arts. 109 y 143 del Código Civil de Puerto Rico, ante, son dos tipos de disposiciones *separadas e independientes* que atienden *situaciones distintas* y que *no* pueden ser interrelacionadas de la forma que pretende el aquí peticionario.

A esos efectos, debemos señalar que, aun cuando simpatizamos con el planteamiento del peticionario, en cuanto éste alega que entre los ex cónyuges no existe ninguna relación de afinidad o consanguinidad que justifique la obligación alimenticia que impone el Art. 109 del Código Civil, ante, somos del criterio que este Tribunal está *impedido* de establecer la normativa que se nos propone, *por constituir dicha acción un acto de legislación judicial que, llana y sencillamente, nos está vedado.*

*Ahora bien,* lo que *no* podemos suscribir bajo ningún concepto es la normativa que pretende establecer la mayoría en cuanto al *tipo de prueba* que debe presentar el ex

cónyuge reclamante al solicitar alimentos *post divorcio*. Sobre este particular se establece que para reclamar este tipo de alimentos el ex cónyuge *sólo* tendrá que demostrar que carece de medios suficientes para vivir, lo cual —según la teoría esbozada por la mayoría— podrá establecerse presentando *"cualquier"* prueba pertinente. Asimismo, se *intima* que al reclamar esta pensión *no* será necesario que el ex cónyuge solicitante establezca las razones que le impiden proveerse su propio sustento.

Para llegar a esta conclusión la mayoría se enfrasca en una extensa explicación histórica de los criterios establecidos en el Art. 109, ante, y luego de llevarnos en un viaje de estudios por varias jurisdicciones, al abordar el navío erróneo, arriba al puerto equivocado, concluyendo que ninguno de estos criterios "añade carga probatoria específica a la reclamación". Esto es, de un solo plumazo la mayoría de este Tribunal ha eliminado la aplicación práctica de estos criterios, e ignoró por completo el propósito que emana claramente de su historial legislativo. Veamos.

Como es sabido, mediante la aprobación de la Ley Núm. 25, ante, la Asamblea Legislativa *enmendó* el Art. 109 del Código Civil, ante, con el propósito principal de reconocer estatutariamente el derecho alimentario *post divorcio* a ambos ex cónyuges y eliminar el concepto de culpa contenido hasta ese momento en el referido estatuto.([7]) Esta enmienda sirvió, además, para añadir una serie de *circunstancias* que, según se estableció *expresamente* en el referido articulado, *los tribunales deben tomar en cuenta al momento de "conceder" la pensión solicitada.*([8])

---

([7]) Además, se estableció la posibilidad de modificar la pensión por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex cónyuge, y se eliminó la causal de "vida licenciosa" para la revocación de la pensión alimenticia.

([8]) Como vemos, el Art. 109, ante, hace referencia específica al término "conceder", aunque se ha señalado que algunos de los criterios incluidos en la referida disposición estatutaria —como la cualificación profesional, probabilidades de acceso a un empleo, dedicación pasada y futura a la familia y colaboración a actividades del otro cónyuge— pueden ser utilizados en la determinación de la cuantía de la pensión solicitada. Véase *Díaz v. Alcalá*, 140 D.P.R. 959, 981 (1996).

A tenor con el historial legislativo de la referida Ley Núm. 25, este enfoque respondió a los señalamientos expuestos en el informe de la Comisión de Gobierno del Senado de Puerto Rico sobre el Proyecto del Senado 652.[9] En su informe de 20 de junio de 1994, la referida Comisión llamó la atención hacia el hecho de que hasta ese momento los criterios para la concesión de alimentos estaban fundamentados exclusivamente en la necesidad del alimentista y los recursos económicos del obligado.

Por esta razón, se recomendó la inclusión de un segundo párrafo al Art. 109, ante, en el que se enumeran algunas *circunstancias adicionales* que los tribunales *deben* tomar en consideración al momento de realizar la determinación de alimentos de ex cónyuge. Según se expresó, "[e]*llo contribuir[ía] a orientar la discreción judicial y a satisfacer las necesidades de los ex cónyuges sobre las bases reales en que está cimentada la institución del matrimonio en la actualidad*". (Énfasis suplido.)[10] Sobre este mismo asunto, en la recomendación que hiciera el Departamento de Justicia con relación al Proyecto de Enmienda del Art. 109, ante, *se indicó que estos criterios eran "adicionales a los ya reconocidos de necesidad y capacidad económica"*.

De este modo, se incluyeron *ocho criterios valorativos que, según el propio texto del Art. 109, ante, deben ser tenidos en cuenta* por los tribunales al momento de conceder los alimentos. Éstos incluyen el análisis de los acuerdos a que hubiesen llegado los ex cónyuges, la edad y el estado de salud de cada uno de éstos, la cualificación profesional y las posibilidades de empleo del ex cónyuge reclamante, la dedicación pasada y futura a la familia, la colaboración en las actividades mercantiles, industriales o profesionales del otro cónyuge, la duración del matrimonio y de la convi-

---

[9] En el referido informe se hizo referencia, a su vez, a las recomendaciones que en ese sentido hiciera el Secretario de Justicia.

[10] Véase el Informe de la Comisión de Gobierno del Senado de Puerto Rico de 20 de junio de 1994, pág. 3.

vencia conyugal, el caudal, los medios económicos y las necesidades del otro cónyuge y cualquier otro factor que el juzgador estime pertinente.

Como vemos, un *análisis responsable* de la disposición estatutaria en controversia y de su historial legislativo nos lleva inexorablemente a la *conclusión* de que, al establecer estos criterios, el legislador tuvo la intención de dotar al juez de elementos adicionales de manera que la *concesión y determinación* de la pensión *post divorcio no* dependiera exclusivamente de la necesidad del reclamante y los recursos del reclamado. *Esto es, que la determinación judicial fuera el resultado de una evaluación de la totalidad de las circunstancias, prestando particular consideración a los criterios enumerados por el legislador en el Art. 109, ante.*

En un desesperado intento por fundamentar su errónea determinación, e ignorando totalmente la intención legislativa y la letra clara de la ley, la mayoría concluye en el caso de autos que los únicos elementos verdaderamente nuevos añadidos al citado Art. 109 con la enmienda de 1995 son aquellos que resultan pertinentes para "fijar el monto de la pensión" y que los elementos relacionados con los criterios de necesidad y capacidad —como pueden ser la edad, el estado de salud, la cualificación profesional y las probabilidades de empleo— "no constituyen nuevos criterios sobre los cuales debe presentarse prueba, sino que fueron elaborados jurisprudencialmente ... para guiar la discreción del juzgador respecto a la solicitud del excónyuge reclamante". 31 L.P.R.A. sec. 385.

De esta forma, concluye que ninguno de los criterios contenidos en el referido Art. 109, *ni siquiera los que reconoce que estn directamente relacionados con los criterios de necesidad y capacidad económica*, añade carga probatoria específica a la reclamación de una pensión alimenticia *post divorcio* y, por consiguiente, establece que para reclamar dicha pensión es suficiente que se establezca, mediante la

presentación de *cualquier* prueba pertinente, la carencia de "suficientes medios para vivir". Ello no obstante, y de forma altamente contradictoria, reitera el mandato legislativo de que los tribunales deben "conceder o negar la pensión *sobre la base de la necesidad del ex cónyuge reclamante* y la capacidad económica del ex cónyuge a quien se le reclama". (Énfasis suplido.)

*Sin lugar a dudas, la opinión que hoy emite la mayoría no sólo crea más interrogantes de las que contesta, sino que, además, evidencia un total desconocimiento de los procedimientos que se suscitan ante una sala de instancia.* ¿Cómo ordenarle a un tribunal que resuelva a base de la necesidad del reclamante, cuando al mismo tiempo se releva a dicha parte de su responsabilidad de presentar prueba al respecto? ¿Cómo pretender que estos elementos puedan guiar la discreción del juzgador si se le priva del beneficio de contar con la evidencia pertinente? ¿Qué curso de acción debe tomar un tribunal de instancia cuando un ex cónyuge reclamante —amparado en la opinión que hoy emite la mayoría— se limite a demostrar que "no cuenta con suficientes medios para vivir" y se niegue a presentar evidencia adicional que permita evaluar responsablemente la procedencia de la pensión solicitada?

Como vemos, la interpretación del Art. 109, ante, que ha hecho la mayoría en este caso no sólo es contradictoria y difícil de implantar en términos prácticos, sino que, además, es contraria a la intención legislativa de proveer parámetros adicionales a los criterios de necesidad y capacidad, contradiciéndola el claro texto de la ley que establece expresamente que las circunstancias, allí enumeradas, deben ser consideradas al momento de conceder una pensión alimenticia *post divorcio*.

Ya hemos sealado que en

> ... [e]l desempeño normal de sus funciones, los tribunales están obligados a respetar la voluntad legislativa aunque los magistrados discrepen personalmente de la sabiduría de los

actos legislativos. Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la [R]ama [J]udicial de las prerrogativas de la [R]ama [L]egislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable.[11]

En vista de lo anterior, resulta evidente que *no* le corresponde a este Tribunal enmendar por la vía judicial el Art. 109 del Código Civil, ante, para eliminar la consideración de los criterios allí enumerados. Sin lugar a dudas, ese es el efecto práctico de la normativa que pretende establecer la mayoría al resolver que los referidos criterios "son más bien ejemplos" de las circunstancias que puede tomar en cuenta el juez al determinar la pensión de ex cónyuge y que no imponen al reclamante una obligación específica de prueba.

## III

La incorrección de la actuación de la mayoría en el caso ante nos es manifiesta. En su afán por concederle alimentos a la peticionaria, se olvida por completo de la deferencia y el respeto que por años le ha merecido a este Tribunal la voluntad legislativa y recurre a una interpretación que es totalmente contraria a ésta. Además, ha *mutilado* la discreción judicial reconocida por el estatuto, en la medida en que limita la prueba que tendrá ante sí el juzgador de hechos al momento de evaluar la procedencia de una solicitud de pensión *post divorcio*.

A nuestro modo de ver las cosas, y refiriéndonos específicamente al requisito de necesidad, es más que evidente que a raíz de las enmiendas realizadas en 1995 al Art. 109, ante, al evaluar la procedencia de una reclamación de alimentos de ex cónyuge, los tribunales *están obligados* a con-

---

[11] *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538 (1996), citando a R.E. Bernier y J.A. Cuevas Segarra, en su obra *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, pág. 299.

siderar las "circunstancias" incluidas a esos efectos en la referida disposición estatutaria, en particular aquellas que estén relacionadas con el requisito de necesidad.([12])

Sobre este particular debemos aclarar que al establecer estos criterios el legislador no indicó el peso que debía darse a cada "circunstancia", dejando el asunto al arbitrio judicial.([13]) Ello no obstante, varios tratadistas puertorriqueños coinciden en que algunos de estos criterios se refieren al derecho y la fijación de la pensión, ya que, según arguyen, están directamente relacionados con el requisito de "necesidad" o "insuficiencia de medios para vivir".([14]) Este es el caso de los criterios relativos a la edad y al estado de salud del alimentista, cualificación profesional y probabilidades de acceso a un empleo y caudal y medios económicos de los implicados.

De lo anterior se colige que al solicitar una pensión alimenticia *post divorcio*, el ex cónyuge reclamante *no* puede limitarse —como arguye la mayoría— a probar que "carece de medios de subsistencia", *sino que tiene que ir más allá y demostrar las circunstancias que provocan que se encuentre en dicho estado de necesidad.* Con relación a este aspecto, la Prof. Sarah Torres Peralta, en su obra *La Ley Especial de Sustento de Menores*, edición especial, San Juan, Pubs. STP, 1997, pág. 3.37, *expone que la obligación de demostrar esta insuficiencia se extiende a que el reclamante* "no tenga forma de obtener los alimentos que necesita de otra manera que no sea la de radicar reclamación bajo el artículo 109". Asimismo, nos expresa que

---

([12]) Debemos señalar que la discreción que el Art. 109, ante, le reconoce a los tribunales es en cuanto a la asignación de alimentos y no en la consideración de estos criterios.

([13]) R. Serrano Geyls, *Derecho de Familia de Puerto Rico y legislación comparada*, San Juan, Ed. U.I.A.P.R., 1997, Vol. I, pág. 764.

([14]) Véanse: R. Serrano Geyls, *op. cit.*, págs. 764–768; S. Torres Peralta, *La Ley Especial de Sustento de Menores*, edición especial, San Juan, Pubs. STP, 1997, págs. 3.41–3.49; R. Ortega-Vélez, *Compendio de Derecho de Familia*, San Juan, Ed. Pubs. JTS, 2000, T. II, págs. 594–598.

"[i]gualmente no podrá reclamar alimentos si tiene aptitud para trabajar y procurarse su propio sustento". Íd.

En este caso la *única* prueba presentada por la reclamante ante el foro de instancia estuvo dirigida a demostrar: que cuenta con cincuenta y un años de edad, que durante el periodo de tiempo que estuvo casada con el demandado no ejerció trabajo alguno, pues se dedicó a la casa y al cuidado de sus hijos, y que actualmente no está empleada. Somos del criterio que estas circunstancias, *sin más*, no son suficientes para reclamar con éxito una pensión de ex cónyuge.

A nuestro juicio, *resulta necesario que el ex cónyuge reclamante presente evidencia*: sobre las gestiones realizadas por él para procurarse un empleo; sobre enfermedades, incapacidades o situaciones especiales que lo inhabiliten para ejercer un trabajo, o que los salarios que percibe, en el empleo en que se desempeña, realmente no son suficientes para cubrir sus necesidades básicas.

Resulta evidente que en el caso de autos la señora Jaime Jaime *no* cumplió con la obligación de presentar prueba suficiente como para mover la discreción del tribunal, al amparo de las disposiciones estatutarias pertinentes, para concederle una pensión de ex cónyuge. La prueba presentada ante el foro de instancia por la señora Jaime Jaime *demuestra que se trata de una persona relativamente joven que goza de buena salud y que está capacitada para trabajar.* Es por ello que el tribunal de instancia *correctamente* denegó su solicitud de pensión. Es de notar que la mejor evidencia de su productividad, o capacidad para trabajar, es que, al momento de solicitar la pensión aquí en controversia, ella se dedicaba a cuidar a su nieta mientras su hijo y nuera trabajaban. No hay duda de que el *mero* hecho de que una persona cuente con cincuenta y un años de edad, no le da a ésta el "derecho" a no trabajar y a que la mantengan. Se debe requerir *algo más* que eso para demostrar necesidad.

*La laxa norma jurisprudencial hoy establecida por la mayoría, sin lugar a dudas, causará una "lluvia" de solicitudes de pensiones de ex cónyuges ante nuestros tribunales de instancia.* Habrá cientos de personas que, incluso, renunciarán a sus empleos y presentarán una solicitud a esos efectos ya que, de hoy en adelante, todo lo que se necesita para la concesión de una pensión de ex cónyuge es, simplemente, tener alrededor de cincuenta años y estar desempleado. No hay que demostrar tan siquiera, *repetimos*, que se han hecho gestiones para conseguir un trabajo. Dicha prueba, conforme la norma establecida por la Mayoría, es impertinente e inadmisible.

Para colmo, la mayoría expresa —con el propósito de tratar de justificar su errónea posición— que, en cuanto a los criterios sobre la edad y el estado de salud establecidos en inciso (b) del Art. 109, ante, "[e]l juzgador debe ser cuidadoso al evaluar estas circunstancias debido al *efecto* que éstas pueden tener sobre la *productividad* de un individuo". (Énfasis suplido.) Opinión mayoritaria, pág. 307. Con la referida aseveración, la mayoría parece insinuar que ser mayor de edad tiene un efecto directo sobre la productividad de una persona, y que las personas maduras sufren una merma en su capacidad productiva.

Además, la mayoría asevera que "una persona de cincuenta y un años de edad no es joven para propósitos de insertarse, por primera vez, en el mercado de trabajo". (Énfasis suprimido.)[15] Esto parece indicar, primero, que para entrar por primera vez en el mercado laboral y ser productivo hay que tener menos de cincuenta y un años, y segundo, que una persona de cincuenta y un años que en efecto se inserte, por primera vez y a esa edad, en el mercado laboral no será productiva.

*Repudiamos dichas aseveraciones.* Sin lugar a dudas, estos argumentos promueven el discrimen por edad que con tanto ahínco hemos tratado de combatir en Puerto Rico

---

[15] Véase el escolio 31 de la opinión mayoritaria, pág. 307.

y empaña el esfuerzo de aquellos trabajadores que, a pesar de sus años, mantienen la misma productividad e interés por realizar un trabajo de excelencia.

En mérito de lo antes expuesto, somos del criterio que en este caso el foro de instancia *no abusó de su discreción al denegar la pensión de ex cónyuge solicitada,* por lo que *revocaríamos* la determinación que en ese sentido realizó el Tribunal de Apelaciones. En vista de que la mayoría ha escogido un curso decisorio contrario al antes mencionado, *disentimos.*